## THE PLANO MANUFACTURING COMPANY
### v.
## A. M. PARMENTER.

*Negotiable Instruments—Note—Guaranty—Settlement with Principal.*

1. In an action brought against a guarantor of a note given to secure the payment for a harvester machine sold to the maker of the note, *held*, that as the evidence showed that the claim had been settled with the principal debtor, the guarantor was thereby released.

2. There being no doubt as to the facts, and the legal right of the appellee to recover being clear, it is unnecessary for this court to examine the instructions.

[Opinion filed August 3, 1891.]

APPEAL from the Circuit Court of Peoria County; the Hon. LAWRENCE W. JAMES, Judge, presiding.

Mr. ARTHUR KEITHLEY, for appellant.

Mr. JOHN M. TENNERY, for appellee.

LACEY, P. J.   This suit was originally brought before a justice of the peace near Peoria, Ill., upon a promissory note, dated December 1, 1886, for $150, payable to the appellant, and due on or before September 1, 1887, signed by C. S. Russell and T. W. McGill, together with indorsement of appellee on the back thereof as guarantor.   The trial took place before the justice, resulting in verdict in favor of appellee and judgment in his favor for costs, from which plaintiff appealed to the Circuit Court; and the case again being tried before the court and a jury, the verdict was for appellee, upon which judgment was rendered and the appellant appealed to this court; and on the 25th of May, 1889, the judgment of the Circuit Court was reversed and the cause remanded, for reasons stated in the opinion.   See 30 Ill. App. 569.   After the reversal and remanding the case was again put on the docket in the Peoria Circuit Court, and on the 10th day of December, 1889, the case being again tried before a jury and the court, resulting in a verdict for appellee, the case is again appealed to this court.   It will not be necessary for us to go over and restate the facts of the case, as the same fully appear in our former opinion, and as to the merits of the case as it appeared to us on the former hearing, we have only to repeat what we then said :  " We think, in view of the evidence, the harvesting machine filled the warranty in letter and in spirit, and in fact, that there was no legal defense to this suit."   We do not feel disposed to go over the same questions and pass upon them that were considered and reviewed in our former decision.   There is some point made by appellant in regard to the admission of evidence in favor of appellee, claiming that it can not be done for the want of proper pleadings.   All we have to say in this particular is, that as this was a case commenced before a justice of the peace, no written pleadings were required.   A new element since the case was here before has been introduced, and it is that Coover, the agent

of the appellant, sold to Russell, one of the purchasers of the old machine for which this suit was brought, a new machine, and procured Van Ness, the general agent of the appellant, to write in substance to the local agent of the company at Knoxville, releasing him from the payment of the note given for the old machine if Russell would purchase a new one, which letter is as follows:

"PEORIA, ILL., June 23, 1888.

"J. P. COOVER, ESQ.,
            Knoxville, Ill.

"*Dear Sir:* You can assure Mr. Russell we will never sue him. If we can't beat Parmenter we certainly can't beat Russell on the same issue. We will take his old machine if we can't do any better.

"C. G. VAN NESS."

In regard to this letter Russell testifies that he bought the new machine in question, a Plano Harvester and Binder; that when he bought the last machine he bought it of the appellant's local agent at Knoxville, and told him that he did not want to buy a new machine with the old one hanging over him in the shape it was in, and that if the company would give him a written release he would buy a new machine from them; and that until he got that release he could not, under any consideration buy one; finally there was a letter came to Coover from Van Ness, and then he gave an order for the new machine for $125. The regular price that season was $150. Mr. Coover, the agent, has that letter. If the machine gave good satisfaction and was paid for, the agents threw off their commission. They, the agents, said in substance that " if they could make a sale to me of a Plano machine 'twould be a great benefit to them. They said they did not make a dollar on the machine. I had no idea of giving up the old machine until I got my note. I never demanded of the plaintiff return of my note." Coover, the local agent at Knoxville, testified that he showed this letter to Russell and then sold him the machine, and also that Van Ness told him through the telephone that he could not release Russell because he had no authority, and he then told Van Ness to write him a letter

that he could show Russell.   The latter said to Coover that he
would not take the word of the Plano Company for anything,
and Coover gave him his personal assurance that it was all right.
It was agreed on the trial that the witness Coover was a sales
agent for the appellant in 1888, occupying the same position
toward it that appellee did in 1886.   In regard to Van Ness'
authority to sell the new machine and make settlement with
Russell, he testifies as follows, to wit:   "There was no special
clause in the paper authorizing me to act for the company
relative to giving contracts back to farmers or others to secure
a settlement.   I was authorized to do a general business and
make settlements where it was necessary.   It was a general
authority to transact business connected with the sales of the
company's machinery and settlements for the same."   It
appears from the evidence that Russell had been dissatisfied
with the working of the machine during the years 1886 and
1887, and the company had made a new contract with him
to fix the machine and make it work according to the original
guaranty, but after repeated efforts had failed to do so, and
Russell was told to go ahead and use it and the appellant
would do what was right in the matter, and that they had a
great desire to make this particular machine work "on account
of the lies brother Parmenter has told about it."   This
authority was given by letter from Van Ness, August 1, 1887,
and it appears Russell was still dissatisfied with the machine
although he used it that harvest, and August 20, 1887, Van
Ness wrote to Russell offering to make the machine all satis-
factory and offering to send him an entire new gear frame for
the machine and makes this statement in the letter:   "You go
ahead and take up your note and we will take care of you all
right."

It appears from this evidence and the letters from Van
Ness, the general agent of the company, to Russell, that the
appellant was quite anxious to fix up the matter and for the
benefit of its trade to make Russell satisfied.   And Van Ness
testifies that after the company were advised about the exist-
ence of the second contract made with Russell and McGill the
appellants told Parmenter to go ahead and make the machine

as good as warranted. After that, Van Ness testifies: "While I was still general agent of the company, Mr. Coover sold Russell and McGill another Plano machine. I was advised by Mr. Parmenter in 1887, that Russell and McGill wanted the company to furnish them a new machine in place of the old one." In view of this testimony, we can not doubt but that Van Ness had full power to make any settlement with Russell and McGill for the appellant concerning the machine sold in 1886, that he saw proper. And from the testimony it is equally clear that he sold them the new machine through Coover, and agreed to release them from the payment of the old one. In fact we think that the sale of the new machine in the manner and under the circumstances under which it was made, was simply a device to give to Russell and McGill a new machine in place of the old one according to the original contract, made in 1886, and modified and continued in force by a new agreement in 1887. The fact that the agent, Coover, was not allowed any commissions on the new machine corroborates this testimony. We must regard, therefore, that Russell and McGill have, for good and valuable consideration, been released from the payment of the note sued on. The principals on the note having been released, the security who is held in law only by the strict letter of his contract ought certainly to be released also. The release of the note to the principals is equivalent to its payment as to the security. The appellant should certainly be as generous to the security as to the principals. There can be no rule of equity that would require the guarantor of a note to pay it after the principal thereto had been released by the payee. There being no doubt as to the facts in this case and the right of the appellee to recover under the law, the instructions are immaterial to be considered, the jury having found the correct verdict. Judgment of the court below is therefore affirmed.

*Judgment affirmed.*